*867 OPINION.
Littleton:
Petitioner claims a loss of $18,878.25 was sustained in the year 1920. The Commissioner allowed it for the year 1919, but deducted depreciation. All but a small portion of the plant and equipment had been disposed of by the last of November, 1919. The amount realized from this sale was $2,619.99 less than the amount which, if realized, was to go exclusively to the Cable Excavator Co. Although a few odds and ends remained the disposition of them did not reducé the amount of the loss and apparently it was known in 1919 that it would not. Petitioner, after November 25, 1919, was seeking some further adjustment w,ith the Cable Excavator Co., but on what basis we do not know. It may have had some, hope of saving something from the wreck, but optimism can not delay the date when a loss is sustained. United States v. White Dental Manufacturing Co. of Pennsylvania, 270 U. S. 398; Paul N. Myers, 7 B. T. A. 1072. The Commissioner has allowed the loss in 1919, and we have no reason to change his determination in this respect.
The next question is whether the loss sustained with respect to the aforementioned sand plant and equipment may be added to the agreed loss from operations and thus arrive at a total “ net loss ” re- *868 suiting from the operation of a business regularly carried on by the petitioner, as provided in section 204 of the Revenue Act of 1918. The Commissioner denied the petitioner the benefit of the loss on the sand plant and equipment as a part of its “ net loss ” on the ground that it was a .loss from the sale of capital assets and, therefore, not an operating loss, whereas petitioner contends that since the cause of the loss resulted from a transaction entered into in furtherance of its business, the loss was in connection with the operations of its business and, therefore, should be included in its “ net loss ” for 1919. While we do not have the most satisfactory evidence as to the exact character of petitioner’s business, we do have the fact that this is a brick company and that the greater part of the losses which were assigned as the basis of the counterclaim which petitioner set up, when suit was brought against it for the balance of the purchase price of the sand plant, was on account of losses alleged to have been sustained on contracts for supplying sand and gravel in various building operations. The machine in question was purchased “ to dig, screen, wash and load ” sand and gravel. To the extent that marketable sand was produced in the test operations, this sand was sold by the petitioner. ISTo question is raised by the Commissioner that the asset in question was not purchased for use in petitioner’s regular business. In view of the foregoing facts, when considered in the light of the entire record in this case, the Board is of the opinion that this was not a new or unrelated venture in which the petitioner sought to engage outside' of its regular business, but rather an acquisition of an asset which was to be used in the business which the petitioner was regularly engaged in carrying on.
With respect to the point raised by the Commissioner that a loss on the sale of a capital asset can not, under any conditions, form a part of a “ net loss,” the Board has already held against such a position in Philip Kobbe Co., 4 B. T. A. 663. There capital stock of another corporation had been purchased in furtherance of the company’s advertising business in which it vas engaged. The stock became worthless in 1919 and the Board allowed the loss on account thereof as a part of the loss from the operation of the company’s business for 1919, and, accordingly, an item to be included in determining its “net loss” for that year. The capital stock there, in question was none the less a capital asset than the sand plant and equipment involved in this case. Both were purchased in furtherance of businesses regularly carried on, and were incident to the production of income in each instance. We think no different rule should be applied in the two cases and, consequently, we are of the, opinion that the Commissioner’s position on this point is not well taken.
*869 The foregoing view is distinguishable from the principle laid down in Manhattan Brewing Co., 6 B. T. A. 952, and in Auburn & Alton Coal Co. v. United States, 61 Ct. Cls. 438, wherein the losses involved were losses which occurred' on the sale of plant and equipment in the “suspension of business,” rather than in the “operation of any business regularly carried on.” Nor is our holding in this case inconsistent with the fact that two classes of losses are allowable as “ net losses ” under section 204, supra, one from operations and the other from the sale of capital assets purchased for the production of articles contributing to the prosecution of the war, for the reason that the production of articles contributing to the prosecution of the war often meant a new venture, outside of a taxpayer’s regular business, which was terminated with the war. Had not specific provision been made for such losses, the considerations which led to the disallowance in the Auburn & Alton Coal Co. case would have prevented such an allowance in many cases. ■ Losses in such instances would result more from the suspension of a business than from the operation of a business regularly carried on. In this case we are dealing with losses which occurred in the continuity of a taxpayer’s regular business and where the loss on the sale of a capital asset may as properly be called an operating charge as any other expense incident to the operation of the business.
It remains only to determine whether, in computing the amount of the loss in 1919, depreciation on the sand plant and equipment from 1913 to 1919 should be taken into consideration. The Commissioner deducted depreciation from 1914 to 1919, inclusive, whereas the petitioner contends that no depreciation should be deducted. The only evidence introduced with respect to depreciation, and that on which the petitioner relies, is that these assets were not used other than in the test operations in 1913 and 1914, and from this we are asked to find that the entire expenditure should be allowed as a deduction when the plant and equipment were-finally disposed of. We do not regard this as sufficient. Depreciation is a question of fact. When property is being subjected to use, the depreciation sustained may be greater than that which is sustained when the property is not being used, though many authorities contend that depreciation may be greater in the latter case. All are agreed, however, that the care of the property in both cases is an important factor. No evidence was here introduced as to how this property was cared for. We have held that this property was acquired for use in petitioner’s business and was so held until finally disposed of under the compromise agreement. The Commissioner has found that depreciation was sustained and since we are unable to say, from the mere fact that the property was not being used, that no depreciation was sustained in *870 any of the years from 1914 to 1919, we must sustain the prima facie correctness of the Commissioner’s determination.
Reviewed by the Board.

Judgment will be entered on 10 days' notice, under Rule 50.